**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Joseph Chalifoux</u>

    v.

<u>BAE Systems, Inc. and ATR
International, Inc.</u>

Case No. 20-cv-401-PB
Opinion No. 2021 DNH 004

**MEMORANDUM AND ORDER**

Joseph Chalifoux filed suit against BAE Systems, Inc. (BAE), a defense contractor, and ATR International, Inc. (ATR), a staffing agency.  Chalifoux seeks relief for violations of the anti-retaliation provision of the False Claims Act (FCA), 31 U.S.C. § 3730 (Count I), the anti-retaliation provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215 (Count II), the New Hampshire Whistleblower Protection Act, N.H. Rev. Stat. Ann. § 275-E:1 et seq. (Count III), and the New Hampshire common law right to protection from wrongful termination (Count IV).  BAE has moved to dismiss Count I, arguing that Chalifoux did not engage in conduct that is protected by the FCA's anti-retaliation provision.  ATR joins in BAE's motion and also seeks to dismiss the remaining counts against it, arguing that Chalifoux's complaint does not sufficiently allege that ATR retaliated against him or was involved in his termination.  For the following reasons, I grant defendants' motions to dismiss

Count I and deny ATR's motion to dismiss the complaint's three remaining counts.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Chalifoux was jointly employed by BAE and ATR from March 1, 2018 until May 22, 2018.  Am. Compl. ¶¶ 9, 13.  During that time he worked as a Technical Recruiter, enlisting workers for open positions at BAE.  Am. Compl. ¶ 17.  BAE managed his day-to-day duties and reported his hours to ATR who then paid him.  Am. Compl. ¶¶ 14, 15, 19.  BAE initially allowed Chalifoux to work from home every other Friday.  Am. Compl. ¶ 24.

One of Chalifoux's assignments was to help fill a "Tech 1" position for Sharon Stehlik, the hiring manager for that position.  Am. Compl. ¶¶ 32-33.  Chalifoux sent Stehlik several qualified applicants, but she only reviewed the materials for one, known by the initials J.B.  Am. Compl. ¶¶ 34-36.  Chalifoux noted that J.B. was far less qualified than the other applicants.  Am. Compl. ¶ 38.  J.B., a member of the military Reserves, was a security guard with no college degree and very little relevant experience for the Tech 1 position.  Am. Compl. ¶¶ 38-40.  Other applicants had college and master's degrees and years of relevant experience.  Am. Compl. ¶ 41.  Several were veterans.  Am. Compl. ¶ 42.  Nevertheless, Stehlik eventually hired J.B. for the role.  Am. Compl. ¶ 43.

Chalifoux was concerned that Stehlik's decision to hire J.B. without considering other, more qualified applicants violated federal statutes, regulations, and Executive Orders that require government contractors to both take affirmative measures to promote the hiring of qualified veterans and consider all qualified applicants for vacant positions. Am. Compl. ¶¶ 44, 47. When Chalifoux presented his concern to his superior at BAE, Alina Ernest, she initially agreed that Stehlik had acted improperly. Am. Compl. ¶ 50. The next day, however, Ernest sent Chalifoux an email questioning whether he had in fact worked all of the hours listed on his timecard for that week. Am. Compl. ¶ 52. Although Chalifoux later attempted to explain why his timecard was accurate, Ernest rejected his explanation, deducted two hours from his timecard and revoked his work from home privileges. Am. Compl. ¶ 59.

Chalifoux believed Ernest reduced his pay and revoked his work-from-home privileges in retaliation for complaining about Stehlik's decision to hire J.B. without considering other qualified candidates. Am. Compl. ¶ 60. In an attempt to pursue his concerns, Chalifoux spoke with Jennifer Boyd, a Human Resources Business Partner at BAE, on May 4 and May 8. Am. Compl. ¶¶ 60-61. Chalifoux also reached out to ATR, emailing Michael Gonzalez on May 9 about his reduced pay and asking ATR for protection from potential retaliation. Am. Compl. ¶ 63.

3

Shirlyn Santos, a Human Resources Specialist at ATR, contacted Chalifoux on May 10, 2018, asking for information about his pay reduction and his retaliation concerns.  Am. Compl. ¶ 65.  On May 14, Annie Eller, with ATR's Human Resources Production Branch, also informed Chalifoux that she was in contact with Boyd at BAE about Chalifoux's concerns.  Am. Compl. ¶ 69.

That same day, Clairise Tillman, a Human Resources Analyst at BAE, requested that Chalifoux enter disposition codes for the Tech 1 position to explain why each candidate for the position had or had not been selected.  Am. Compl. ¶¶ 70, 72.  Chalifoux believed that, by entering disposition codes for the rejected candidates' applications, he was implying that they had been considered when he knew they had not.  Am. Compl. ¶¶ 71-72.  Chalifoux forwarded Tillman's request to Ernest, repeating his concerns about the application process for the Tech 1 position.  Am. Compl. ¶ 73.  He informed her that he had originally entered "Not Selected" because none of the available codes were accurate.  Am. Compl. ¶ 73.  Ernest ordered Chalifoux that same day to select another code and stated that he could use the code "met basic qualifications, not most qualified" for the rejected candidates.  Am. Compl. ¶ 74.  Chalifoux believed this code to be inaccurate because the other candidates were more qualified than J.B.  Am. Compl. ¶ 74.

4

On May 21, Chalifoux again emailed Eller at ATR, to update her on the status of his employment at BAE and to determine how ATR would protect him from further retaliation.  Am. Compl. ¶ 77.  The next day, Chalifoux met with Boyd in her office.  Am. Compl. ¶ 81.  Eller participated by telephone.  Am. Compl. ¶ 81.  During the meeting, Boyd informed Chalifoux that Stehlik's hiring of J.B. had been investigated, Stehlik was found to have acted appropriately, and J.B. was the most qualified candidate for the position.  Am. Compl. ¶ 82.  She also noted that Chalifoux had started work at 6:00AM one day and informed him that that was too early to start work without her permission.  Am. Compl. ¶ 82.  She then terminated his employment.  Am. Compl. ¶ 82.

ATR continued to place employees at BAE after Chalifoux was terminated.  It never investigated Chalifoux's retaliation complaint and it never demanded that BAE take corrective action.  It also refused to assign Chalifoux to positions with other companies.  Am. Compl. ¶¶ 84-85.

## II.  STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must include factual allegations sufficient to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Under

this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).  Plausibility demands "more than a sheer possibility that [the] defendant has acted unlawfully," or "facts that are merely consistent with [the] defendant's liability."  Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).  Although the complaint need not set forth detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555).

    In evaluating the pleadings, I excise any conclusory statements from the complaint and credit as true all non-conclusory factual allegations and reasonable inferences drawn from those allegations.  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  I "may also consider 'facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss.'"  Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019) (quoting Artuert-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### III. ANALYSIS

BAE contends that Chalifoux's FCA retaliation claim is defective because he fails to allege that he engaged in conduct protected by the FCA.  ATR joins in BAE's challenge and also argues that Chalifoux's remaining claims against it are doomed because he has not sufficiently alleged that ATR retaliated against him or was otherwise responsible for his termination.  I address each argument in turn.

#### A.  False Claims Act Claim

The First Circuit has explained that "to prevail on a False Claims Act retaliation claim, a plaintiff must show that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 235 (1st Cir. 2004).  "In order to satisfy the first element of a cause of action under 31 U.S.C. § 3730(h), a plaintiff must demonstrate that he or she engaged in activity protected under the FCA.  This element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation.  Rather, an employee's conduct is protected where it involves 'acts done . . . in furtherance of' an FCA action."  Id. at 236 (quoting 31

7

U.S.C. § 3730(h)). The First Circuit has defined conduct "in furtherance" of an action under the FCA "as conduct that reasonably could lead to a viable FCA action." Id. "[I]n other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government." Id. at 237.

Defendants target the first element of Chalifoux's FCA retaliation claim.[1] They argue that Chalifoux's complaints about Stehlik's decision to hire J.B. without considering other applicants for the Tech 1 position and his refusal to enter false disposition codes for the unsuccessful candidates do not qualify as protected conduct under the FCA because they are not tied to a claim for payment by BAE. To support their position, defendants invoke a body of First Circuit law which recognizes that a complaint about a contractor's failure to abide by contract terms or comply with federal regulations does not qualify as protected conduct unless the complaint is linked to false or fraudulent claims for payment. Guilfoile v. Shields, 913 F.3d 178, 187 (1st Cir. 2019); United States ex rel. Booker

---

[1] Defendants also allege that Chalifoux failed to satisfy the other elements of an FCA retaliation claim. I need not consider those argument because I conclude that Chalifoux has failed to allege that he engaged in conduct protected by the FCA.

8

v. Pfizer, Inc., 847 F.3d 52, 60 (1st Cir. 2017); Karvelas, 360 F.3d at 237.

Chalifoux responds by claiming that his resistance to BAE's regulatory violations is protected by the FCA because it reasonably could have led to the exposure of a larger plot by BAE to submit false claims. Chalifoux's argument proceeds in several steps. First, he asserts that BAE's contracts with the government include "equal opportunity clauses" that require BAE to consider every qualified candidate before it fills a vacant position. Next, he contends that BAE fraudulently induced the government to agree to the contracts by falsely representing that it intended to fulfill its equal opportunity obligations. He then claims that BAE's contracts are themselves false claims under the FCA. Finally, he argues that the contracts, BAE's fraudulent representations that it had complied with its equal opportunity obligations, and its creation of false records to conceal its misconduct can all therefore serve as grounds for viable FCA claims.

I reject Chalifoux's argument because it is based on the mistaken premise that BAE's contracts with the government constitute claims under the FCA. "The False Claims Act imposes civil liability on 'any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.'" Universal Health Serv., Inc. v. United States ex

9

rel. Escobar, 136 S.Ct. 1989, 1999 (2016) (quoting 31 U.S.C. § 3729(a)(1)(A)).  Entering into a contract with the federal government is not the same as presenting a claim for payment to the government.[2]

Although promissory fraud can be a viable theory of common law fraud, it must be grounded in a claim for payment when it serves as the basis for an FCA claim.  See Karvelas, 360 F.3d at 225 ("Not all fraudulent conduct gives rise to liability under the FCA.").  Indeed, as the First Circuit has reiterated time and again, "[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"  Id. (quoting United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995)).  Thus, "a defendant violates the FCA only when he or she has presented to the government a false or fraudulent claim, defined as 'any request or demand . . . for money or property' where the government provides or will reimburse any part of the money or

---

[2] Chalifoux finds support for his interpretation of the statute in a decision from the District of Maine, Manfield v. Alutiiq Int'l Sols., Inc., 851 F. Supp. 2d 196, 203 (D. Me. 2012) ("The contract itself constitutes a claim for payment, insofar as it recites the obligations of each party to one another"). However, this decision was handed down before the Supreme Court's decision in Escobar, in which the Court clarified the meaning of "false or fraudulent claims" under the FCA, and without the benefit of briefing by the parties on the statutory language at issue.

property requested." Karvelas, 360 F.3d at 225 (quoting 31 U.S.C. § 3729(c)). Because Chalifoux has not tied his promissory fraud argument to a demand by BAE for payment, he has not sufficiently alleged that his resistance to BAE's regulatory violations and contractual breaches reasonably could have led to an FCA action against BAE. Accordingly, I grant defendants' motions to dismiss Chalifoux's FCA retaliation claim.[3]

---

[3] Although Chalifoux might be able to link his promissory fraud theory to a demand by BAE for payment, he would have to allege and ultimately prove that the fraud he cites is material to the government's payment decision. See 31 U.S.C. § 3729(b)(4) (defining "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property; see also United States ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006) ("the promissory fraud theory requires that the underlying fraud be material to the government's decision to payout moneys to the claimant"); United States ex rel v. Stephens Institute, 909 F.3d 1012, 1018-19 (9th Cir. 2018) (applying Hendow post Escobar); United States v. Strock, 982 F.3d 51 (2d Cir. 2020) (rejecting argument that "materiality must be assessed primarily with regard to government's decision to award contracts" and holding instead that "the government's 'payment decision' under Escobar encompasses both its decision to award a contract and its ultimate decision to pay under that contract"); but cf. Scollick ex rel. United States v. Narula, No. 14-cv-1339, 2020 WL 6544734 at *8 (D.D.C. Nov. 6, 2020) ("Escobar's materiality standard applies only to False Claims Act suits alleging falsity under the implied false certification theory of falsity"). As the Supreme Court has noted, this standard is "demanding." Escobar, 136 S. Ct. at 2003. "A misrepresentation cannot be deemed material merely because the government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the government would have the option to decline to pay if it knew of the defendant's noncompliance." Id. Because Chalifoux has not attempted to connect his complaints about BAE's regulatory violations to the submission of fraudulent claims, and because this issue as not

B.     **Remaining Claims Against ATR**

ATR also moves to dismiss Chalifoux's other three claims against it: a retaliation claim under the FLSA; a claim under New Hampshire Whistle Blower Protection Act; and a wrongful termination claim under New Hampshire common law. It argues that these claims fail even if Chalifoux faced unlawful retaliation from BAE because Chalifoux "does not allege that ATR terminated, retaliated, or took actionable adverse employment action against [him]." Doc. No. 30 at 4. I disagree.

Chalifoux alleges that ATR refused to place him with other companies in retaliation for his complaints about BAE's alleged misconduct. An employer's complete refusal to assign work to an employee plainly can qualify as a constructive discharge. A constructive discharge, in turn, can support FLSA retaliation, Bartolon-Perez v. Island Granite & Stone, Inc., 108 F.Supp.3d 1335, 1340 (S.D. Fla. 2015), and Whistleblower Protection Act claims. It can also serve as the foundation for a wrongful termination claim. Karch v. BayBank FSB, 147 N.H. 525, 536 (N.H. 2002). Accordingly, I am not persuaded by ATR's motion to dismiss these claims.[4]

---

been adequately briefed by the parties, I need not speculate about whether he could meet this demanding standard.
[4] Chalifoux also alleges that ATR can be held liable for failing to take affirmative steps to protect Chalifoux from retaliation by BAE.  See e.g. Burton v. Freescale Semiconductor Inc., 798 F.3d 222, 229 (5th Cir. 2015). Because I deny ATR's motion to

## IV. CONCLUSION

For the foregoing reasons, I grant defendants' motions to dismiss Count I (Doc. Nos. 28 and 30) and deny ATR's motion as it pertains to Counts II, III, and IV.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

January 6, 2021

cc: Allan Keith Townsend, Esq.
Courtney H. G. Herz, Esq.
Michael D. Ramsdell, Esq.
Eulalio J. Garcia, Esq.
Tara E. Lynch, Esq.

---

dismiss for other reasons, I need not address his argument at this stage in the proceedings.